IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
            v.                      )       No. 14-4057-CR-C-SRB
                                    )
ERIC ANDRES ROLAND,                 )
                                    )
                    Defendant.      )

## REPORT AND RECOMMENDATION

Before the Court is defendant Eric Roland's motion to suppress evidence. Defendant
argues for suppression of all evidence obtained as a result of a traffic stop which occurred in
Sedalia, Pettis County, Missouri on November 18, 2013. The Government has filed suggestions
in opposition and a hearing was held before the undersigned.

## Facts

On December 19, 2013, in the late evening/early morning hours, Detective Kevin
Schoenfeld of the MidMo Task Force received information from a confidential informant (CI)
that a particular person, Eric Roland would be transporting drugs in his vehicle that evening.
The CI was known to be reliable by Detective Kevin Schoenfeld in that he/she had provided
reliable information on prior occasions (at least 2 times in the previous 60 days). The CI advised
Detective Schoenfeld that Eric Roland would be traveling in the late evening or early morning
hours that night from his (Roland's) residence in the Sunrise Beach area to the Miller County,
Lake of the Ozarks area, and provided a description of the vehicle Roland would be driving. The
CI also provided that the vehicle license plates would not match the vehicle Roland would be
driving. Detective Schoenfeld testified he was familiar with where Eric Roland lived based on
prior drug investigations, and therefore, understood what the route of travel for Eric Roland
would likely be. Based on the information received from the CI, Detective Bartlett, who was
riding in the same vehicle as Detective Schoenfeld, made contact with Cpl. Matthew Rice of the
Highway Patrol, and the Miller County K9 team, Cpl. Wilson, and asked if they would be on
standby should the vehicle described by the CI be spotted by law enforcement that evening/early
morning.

1

Just before 1:30 a.m. Sgt. Bartlett saw a F150 pickup (as described by the CI) traveling West on Route MM. When Det. Schoenfeld and Sgt. Bartlett ran the F150's license plate, the license plate came back to a Ford Bronco. Sgt. Bartlett contacted Cpl. Rice and advised that the vehicle as described the by CI was headed in the direction of Cpl. Rice's location. Cpl. Rice viewed the vehicle described by Sgt. Bartlett on Route MM and then viewed the vehicle turn onto Hwy. 242. Cpl. Rice ran the license plate on the Ford F150 pickup truck, of which indicated the license plates belonged to a Ford utility vehicle, specifically a Ford Bronco. Cpl. Rice then initiated a traffic stop of the vehicle at approximately 1:32 a.m.

Cpl. Rice approached the F150 and noticed one occupant, which was identified during the traffic stop as Eric Roland. Cpl. Rice explained to Roland the reason for stopping his vehicle, explaining the license plates on the vehicle showed to belong to a Ford Bronco and not the Ford F150 pickup truck Roland was driving. Cpl. Rice then asked Roland to step back with him to his police vehicle and have a seat inside, while Cpl. Rice ran his information through the vehicle's computer. While inside Cpl. Rice's vehicle, Rice had further conversation with Roland about the registration violation. Cpl. Rice noticed Roland was breathing hard and was unusually nervous despite being told the reason he was stopped was his license plates. Roland told Cpl. Rice that he had bad nerves.

During the conversation with Roland, Cpl. Rice asked Roland if he could search his vehicle, to which Roland responded no. Cpl. Rice subsequently exited his vehicle for a couple of minutes to speak with Detective Schoenfeld and Sgt. Bartlett who had arrived at the location of the vehicle stop. Cpl. Rice, Detective Schoenfeld and Sgt. Bartlett discussed the narcotics investigation as to Roland, and called the K-9 unit which had previously been put on standby. The Miller County Dispatch records show the K-9 unit being dispatched at approximately 1:54 a.m. Cpl. Rice returned to his vehicle and proceeded with completing a citation report in the computer. Cpl. Rice testified that prior to the arrival of the K-9 unit at approximately 2:03 a.m. he was still processing the traffic stop.

When Cpl. Wilson, the Miller County K-9 unit, arrived at the location of the traffic stop, he talked with Cpl. Rice regarding his observations during the traffic stop. Cpl. Wilson then proceeded to walk around Roland's vehicle with his certified narcotics detection K-9, which alerted several times on Roland's vehicle. The time of the alert on the vehicle was logged by the Miller County Sheriff's Department as 2:14 a.m. Based on the K-9's alerts, the officers searched

2

Roland's vehicle and found drugs and firearms. Specifically, the officers found: two handguns (one which was determined to be stolen); 3 large baggies of methamphetamine; additional quantities of methamphetamine, mushrooms and marijuana; and drug paraphernalia such as pipes, bongs and digital scales. Roland was placed under arrest and then his person was searched incident to his arrest. The search of Roland's person, lead to the discovery of more drugs. Cpl. Rice completed the traffic citations after Roland had been placed under arrest, and handed Roland his copy of the citations at that time.

## Discussion

Defendant Roland argues for suppression based on what he alleges was an improper extension of the traffic stop by Trooper Rice that violated his Fourth Amendment rights. Defendant asserts two arguments in support: (1) Trooper Rice completed or should have completed the mission of the traffic stop before the K-9 ever arrived, and therefore, the extended detention of Defendant to await the arrival of the K-9 to sniff Defendant's vehicle was an unreasonable seizure; and (2) Trooper Rice did not have reasonable suspicion of criminal activity necessary to justify extending the traffic stop/detention of Defendant in order to allow a K-9 to sniff Defendant's vehicle.

**(1) Was the traffic stop unreasonably extended to allow a dog sniff of Defendant's vehicle?**

A traffic stop is like a brief stop/seizure under Terry v. Ohio, 392 U.S. 1 (1968). Its tolerable duration is determined by the stop/seizure's mission. The mission of a traffic stop is to address the traffic violation that warranted the stop and to attend to any related safety concerns. Rodriguez v. United States, ___ U.S. ___, 135 S.Ct. 1609, 1611 (2015). The Fourth Amendment may tolerate certain unrelated investigations during a traffic stop so long as these investigations do not lengthen the roadside detention. Id. However, authority for the traffic stop seizure ends when the tasks tied to the traffic infraction are or reasonably should have been completed. Id.

Upon review of the facts in this case, the Court finds that the additional delay between when defendant Roland's vehicle was stopped at 1:32 a.m. and the time K-9 alerted at 2:14, was beyond the reasonable time in which the traffic stop should have been completed. While an officer may detain the occupants of a vehicle while he completes a number of routine tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the inquiring as to identification, driver's license and criminal history information for the vehicle's

3

occupants, such detention cannot be unreasonably extended.  United States v. Munoz, 590 F.3d 916, 920 (8th Cir. 2010).  Police may not extend an otherwise-complete traffic stop, absent reasonable suspicion, in order to conduct a dog sniff.  Rodriguez, 135 S.Ct. at 1609.

Here, Cpl. Rice's actions and testimony show that he extended the traffic stop beyond the time it should have taken him to complete the mission of the traffic stop.  Cpl. Rice stated that he was actively involved in a drug investigation of the Defendant while he was processing the traffic citations for the Defendant.  This drug investigation included Cpl. Rice exiting his vehicle while Defendant was seated inside, to discuss the drug investigation with Detective Schoenfeld and Sgt. Bartlett, and also included the subsequent request for a drug K-9 to come to the scene to sniff Defendant's vehicle.  Forty-two minutes elapsed between Cpl. Rice's initial stop of Defendant's vehicle for improper registration/license plates and the time the drug K-9 alerted to Defendant's vehicle.  While Cpl. Rice asserts that the traffic stop was still ongoing at the time the drug K-9 alerted to Defendant's vehicle, in that he had not yet issued the traffic citations to the Defendant, this is not determinative of whether the mission of the traffic stop was complete.  Rather, "[t]he critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop."  Rodriguez  v. United States, 135 S.Ct. at 1611-12.  Cpl. Rice's own testimony affirms that the drug investigation, of which included the dog sniff, prolonged his completing the traffic stop.

In 2013 when the traffic stop in this case took place, the law in the Eighth Circuit provided that a delay between the end of the traffic stop and the time a drug K-9 indicated on the presence of drugs in a vehicle was not an unreasonable seizure if the extension of the traffic stop was deminimus intrusion on the driver's liberty.  United States v. Rodriguez, 799 F.3d 1222 (8th Cir. 2015).  While, this law was overturned in 2015 by the Supreme Court of the United States in the Rodriguez v. United States, ___ U.S. ___, 135 S.Ct. 1609 (2015) case, this 2015 law is not applicable to this case because the dog sniff and search of Defendant's vehicle occurred prior to this 2015 decision.  Id.  A deminimus intrusion as applied by the Eighth Circuit is an extension of the traffic stop by "well under ten minutes," United States v. Moran, 270 F.3d 625 (8th Cir. 2001), or "seven or eight minutes."  United States v. Rodriguez, 799, F.3d 1222 (8th Cir. 2015).  Here, Cpl. Rice testifies that he did not issue citations to Defendant until after the dog had alerted on Defendant's vehicle.  Thus, there is no specific time frame to analyze between when the traffic stop ended and when the drug dog alerted.  Therefore, the Court looks at the nature or

4

mission of the traffic stop in comparison with the overall time that elapsed between the initiation of the traffic stop and when the drug K-9 alerted on Defendant's vehicle. The Court finds that based on the nature of the traffic stop, that is improper vehicle registration, the stop should not have taken forty-two minutes to complete, and that the delay caused by the dog sniff was not "well under ten minutes." In fact, Cpl. Rice specifically testified that if he had not been doing other things related to the drug investigation, he could have completed the traffic stop in five minutes. The difference between five minutes and forty-two minutes is not deminimus. The Court finds based on the evidence, that the extension of the traffic stop in this case was more than a deminimus intrusion.

Because Cpl. Rice's separate drug investigation, including the dog sniff, caused more than deminimus delay in the completion of the traffic stop in this case, the Court must address the issue of whether Cpl. Rice had reasonable suspicion warranting the continued detention of Defendant beyond the time that Cpl. Rice reasonably should have completed the traffic stop.

**(2) <u>Was there reasonable suspicion of criminal activity to justify extending the traffic stop/detention of Defendant in order to allow a dog sniff of Defendant's vehicle.</u>**

Police may conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime. <u>United States v. Horton</u>, 611 F.3d 936, 940 (8th Cir. 2010). This standard requires that officers be able to point to specific, articulable facts justifying the seizure. <u>Id.</u> Reasonable, articulable suspicion requires less than probable cause of criminal activity, but the suspicion cannot be based on an "inarticulate hunch." <u>Id.</u> The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience. <u>Id.</u> Various behaviors and circumstances can contribute to, or be sufficient to provide, reasonable, articulable suspicion. <u>Id.</u>

Here, the Court finds that based on the totality of circumstances, Cpl. Rice had reasonable, articulable suspicion to justify prolonging the traffic stop and detaining Defendant beyond the time in which the traffic stop should have been completed, in order to allow a K-9 to sniff Defendant's vehicle. The evidence shows that Cpl. Rice had more than a mere hunch that Defendant was likely transporting drugs in his vehicle.

Prior to the traffic stop, information was received by law enforcement from a known reliable confidential informant who provided details of Defendant transporting drugs in his

vehicle. This information was shared with Cpl. Rice. The information included the date, the time frame of late evening/early morning, identified a specific route of travel and included a description of the vehicle, including the mismatched license plates. This information was corroborated when Cpl. Rice saw a vehicle matching the description given, with mismatched license plates, traveling at the time and location indicated by the informant, of which was driven by the Defendant.

Additionally, during the traffic stop, Cpl. Rice testified that he observed Defendant's intensely nervous behavior. While general nervousness is not unusual during a traffic stop, Cpl. Rice described Defendant's nervousness as unusually intense and prolonged, with Defendant breathing hard and very nervous, even after being advised that the reason for the stop was improper registration of the vehicle he was driving. Also unusual was Defendant's explanation for his very nervous behavior as being caused by his "bad nerves."

The evidence shows the collective information that Cpl. Rice had within a few minutes of the traffic stop provided a valid objective justification for the continued detention of the Defendant. See United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007) (reasonable suspicion must be more than an inchoate hunch, but the Fourth Amendment requires only that police articulate some minimal, objective justification for the investigatory detention). The Court finds that Cpl. Rice had reasonable suspicion that Defendant was transporting drugs in his vehicle. Cpl. Rice's reasonable suspicion was justification for extending the detention of Defendant and his vehicle in order to allow a drug K-9 to sniff Defendant's vehicle. See United States v. Lyons, 486 F.3d at 371 ("If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense."). The prolonging of the traffic stop/detention of the Defendant was a reasonable seizure which did not violate Defendant's Fourth Amendment rights.

Conclusion

As set forth above, the Court finds there has been no violation of Defendant's Fourth Amendment rights resulting from the traffic stop or the extension of the traffic stop to conduct a dog sniff of Defendant's vehicle.

IT IS, THEREFORE, RECOMMENDED that defendant Eric Roland's Motion to Suppress be denied. (Doc. 31).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. Failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 24th day of February, 2017, at Jefferson City, Missouri.


/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge